# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

BRIAN D. HENLEY,

                 : 

       Petitioner,                       Case No. 3:07-cv-031

                           :        District Judge Walter Herbert Rice

      -vs-                         Chief Magistrate Judge Michael R. Merz

ERNIE MOORE, Warden,

                 : 

       Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner brought this action pursuant to 28 U.S.C. §2254 to obtain relief from a conviction in the Montgomery County Common Pleas Court for four counts of rape, one count of kidnaping, two counts of felonious assault, and one count of attempted felonious assault (Petition, Doc. No. 4, at ¶ 5.)  He pleads the following grounds for relief:

> **Ground One:** Petitioner was denied his 6th and 14th Am. rights to the effective assistance of trial counsel when counsel failed to
>
> 1.     Object to the sentencing court enhancing Defendant's sentence beyond the statutory maximum range based upon facts neither charged in the indictment, admitted by Defendant, or proven to a jury;
>
> 2.     Object when the judge, in determining Defendant to be a "sexual predator," and in imposing consecutive sentences, demonstrated bias and abused its [sic] discretion by accusing Defendant of having committed several alleged rape crimes which were neither charged, tried, or made subject to cross examination;
>
> 3.     Object when Defendant was sentenced separately for crimes that constitute "allied offenses" of similar import stemming from a multiplicitous indictment;
>
> 4.     Mitigate at sentence;

5. Correct sentencing error when the court used a prior conviction for a misdemeanor offense as an aggravating factor when the evidence was insufficient to support the finding;

6. Correct the sentencing error when the judge erroneously found that the Defendant had violated a term of probation for a misdemeanor;

7. Object when the sentencing court elevated Defendant's statutorily presumed status from a sexually-oriented-offender to a sexual predator based upon facts that were neither admitted by the Defendant or found by a jury;

8. Object to the admission of repetitive and gruesome photos of the complainant's wound's [sic] at trial, and, counsel failed to object to prejudicial video-taped footage of the complainants standing nude and bloody on an RTA bus, and counsel failed to object when the complainant standing nude and bloody on an RTA bus, and, counsel failed to object when the complainant stood up in front of the jury, raised up her shirt, and displayed several wounds that allegedly occurred during the incident in question;

9. Object to several repeated textbook instances of prosecutorial misconduct when the prosecutor (a) testified under the guise of asking a question, (b) made comments aimed at inflaming juror passions, (c) violated Defendant's right to be present at his own trial by stating to the jury, in summation, that the Defendant's unique opportunity to be present at his own trial allowed him to tailor his testimony to fit that of the evidence already presented, (d) made inadmissible statements about the Defendant's character;

10. Impeach the credibility of the complainant as to a prior inconsistent statement she made to a medic stating that "a coworker raped me";

11. Request a jury instruction on the lesser degree of felonious assault, which is aggravated assault, when the Defendant presented evidence of extreme provocation;

12. Object when a states' [sic] witness made comments aimed at inflaming juror passions;

13. Defense counsel told the jury that Defendant is "a womanizer" thus violating Defendant's right to a fair trial.

**Ground Two:** Trial court errors violated Defendant's Constitutional rights to due process, confrontation, compulsion, and rights against being put twice in jeopardy for the same offense (5th, 6th, 14th Am. U.S. Con.) when the court:

-2-

a.[1]    Abused its discretion at trial by arbitrarily restricting the testimony of a defense witness;

b.    Exhibited bias and abused its discretion at sentencing by accusing Defendant of having committed rapes upon three other individuals with no evidence from the record whatsoever to support these innuendos, and, based upon these non-charged and untried allegations, the court further stated that the Defendant is a "serial rapist," a threat to the public, and that consecutive sentences were necessary to protect the public from him;

c.    Abused its discretion by ordering Defendant to survey "mandatory" ten year sentence for each multiplicitous rape count when the statute under which Defendant was convicted does not authorize the imposition of a mandatory prison sentence;

d.    Sentenced Defendant separately for crimes that constitute allied offenses in violation of double jeopardy prohibitions;

e.    Failed to prove by clear and convincing evidence that the Defendant is a "sexual predator";

f.    Imposed a sentence that resulted in cruel and unusual punishment;

g.    Overruled defense counsel's request to cross examine detectives as to statements made to them by the Defendant even after the prosecutor "opened the door";

h.    Allowed the prosecutor to elicit testimony from the complainant that the Defendant is "gay or bisexual" even after objection by defense counsel.

**Ground Three:** Defendant was denied his 6th and 14th Am. rights to the effective assistance of counsel on appeal due to his appellate counsel's failure to:

1.    Argue and brief the ineffectiveness of the Defendant's trial counsel as listed in ground one of the petition;

2.    Argue and brief the errors of the trial court as listed in ground to of this petition, labeled claims G and H;

3.    Deficient presentation of the issues raised.

**Ground Four:** the evidence presented at trial was insufficient to sustain the conviction of "attempted felonious assault."

---

[1]The Magistrate Judge uses letters rather than numbers to enumerate these sub-claims because Petitioner has consistently referred to them by their letter designation in his motion papers.

(Petition, Doc. No. 4.)

## Procedural History

Henley was indicted by the Montgomery County Grand Jury on June 14, 2004, and was found guilty by a jury on September 28th of that year on one count of kidnaping, four counts of rape, two counts of felonious assault, and one count of attempted felonious assault.  On October 29th the trial judge sentenced Henley to an aggregate term of twenty-two years imprisonment and classified him as a sexual predator.  At sentencing the trial judge also made the findings then required under Ohio law for greater-than-minimum sentences, consecutive sentences, and maximum sentences.

Henley appealed to the Montgomery County Court of Appeals, raising the following assignments of error:

> **ASSIGNMENT OF ERROR NO. 1:** THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION AND VIOLATED THE CONSTITUTIONAL RIGHTS OF APPELLANT BY RESTRICTING THE TESTIMONY OF A DEFENSE WITNESS.
>
> **ASSIGNMENT OF ERROR NO. 2:** THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> **ASSIGNMENT OF ERROR NO. 3:** THE TRIAL COURT ERRED IN THE IMPOSITION OF SENTENCE ON APPELLANT.
>
> **ASSIGNMENT OF ERROR NO. 4:** THE TRIAL COURT ERRED IN DESIGNATING APPELLANT A SEXUAL PREDATOR.

(Return of Writ, Doc. 6, at Exhibit 11, pp. 6-35.)  After the conviction was affirmed, Petitioner appealed to the Ohio Supreme Court, raising the following propositions of law:

> **PROPOSITION OF LAW NO. I**: Court erred in exceeding

-4-

minimum sentence based upon facts not found by a jury or admitted by Defendant. (*Blakely v. Washington* 2004, 124 S.Ct. 2531) 6th Amd.

**PROPOSITION OF LAW NO. II:** Sentence is contrary to law 2953.08 (*State v. Comer* 99 Oh.St.3d 463) 2929.14(E)(4) *(State v. Edmonson* 86 Oh.St.3d 324, 326) 2929.29(B)(2)(C).

**PROPOSITION OF LAW NO. III**: Court erred in labeling Mr. Henley a "Sexual Predator" – First Offender- (*State v. Eppinger* 91 Oh.St.3d 158, 2001 Oh. 247).

*Id.*, Exs. 15, 16. The Ohio Supreme Court declined jurisdiction.

On January 31, 2006, Petitioner filed an application to reopen his direct appeal pursuant to

Ohio R. App. P. 26(B), setting forth the following "arguments:

**ARGUMENT NO. 1:** TRIAL COUNSEL WAS INEFFECTIVE THUS VIOLATING THIS PETITIONER'S RIGHTS AS GUARANTEED BY THE 5TH, 6TH, 8TH, AND 14TH AMENDMENT.

**ARGUMENT NO. 2:** TRIAL COURT ERROR.

**ARGUMENT NO. 3:** INSUFFICIENT EVIDENCE.

*Id.*, Ex. 23. The Court of Appeals found Petitioner had failed to demonstrate his appellate counsel

was ineffective and denied reopening. *Id.*, Ex. 27. From that judgment, Petitioner appealed to the

Ohio Supreme Court, pleading the following propositions of law:

**PROPOSITION OF LAW NO. 1**: TRIAL COUNSEL WAS INEFFECTIVE THUS VIOLATING PETITIONER'S 5TH, 6TH, AND 14TH AMENDMENT RIGHTS.

**PROPOSITION OF LAW NO. 2**: TRIAL COURT ERRORS VIOLATED PETITIONER'S 5TH AND 14TH AMENDMENT RIGHTS TO DUE PROCESS AND EQUAL PROTECTION.

**PROPOSITION OF LAW NO. 3:** EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CHARGE OF ATTEMPTED FELONIOUS ASSAULT.

-5-

*Id*., Ex. 28.

Mr. Henley also filed a petition for post-conviction relief under Ohio Revised Code §
2953.21, pleading the following claims:

> **CLAIM NO. I:** Right to effective assistance of counsel was
> violated…U.S. Const.
>
> **CLAIM NO. 2:** Petitioner was denied equal protection of the laws
> in violation of the Ohio and U.S. Constitution. See. Senate Bill 2
> which grants post-conviction relief.
>
> **CLAIM NO. 3:** Counsel performed ineffectively in violation of Ohio
> and U.S. Constitution.

*Id*., Ex. 31.  The petition was denied and Henley took no further appeal, instead filing his Petition

here on January 31, 2007.  As ordered, Respondent filed an Answer/Return of Writ (Doc. No. 6) and

Petitioner filed a Reply (Doc. No. 9).  On the Court's Order (Doc. No. 8), Respondent filed a

Surreply (Doc. No. 12) to which Petitioner has responded (Doc. No. 13).

## Facts as Found by the Court of Appeals

In deciding the case, the Montgomery County Court of Appeals made the following findings

of fact:

> At trial, the State presented the testimony of the victim who testified
> that she had been at work at Chicken Louie's restaurant on Sunday,
> May 23, 2004. The victim was working the night shift. She testified
> that Henley came into the restaurant at approximately 2:00 a.m. on
> May 24. The victim was acquainted with Henley, whom she had met
> at Sinclair College. She testified that she had not seen him for about
> six months. She stated that Henley waved at her, indicated that he
> wanted her telephone number -- which she did not give -- purchased
> food and left.

The victim testified that after her shift ended, she went to her bus stop, where she encountered Henley. She testified that Henley offered her a ride home and that she initially refused the offer. However, the victim testified that she subsequently accepted the offer of a ride. During the approximately ten-minute ride, Henley and the victim engaged in conversation about the victim's intention to move to Florida. The victim testified that upon reaching her apartment complex, Henley asked to enter her apartment to use her restroom. The victim stated that she agreed after Henley kept insisting he had to use the restroom. After entering the apartment, Henley went to the restroom, while the victim checked her voice mail. She testified that Henley claimed there was no toilet tissue in the restroom and so she went to the linen closet to retrieve some tissue. The victim testified that she bent down into the closet to retrieve the tissue, and that when she stood up, Henley was standing behind her.

According to the victim, Henley had a knife and duct tape. The victim testified that Henley ordered her into her guest bedroom, where he told her to take off her clothes. She stated that she stripped down to her bra when Henley placed duct tape on her mouth and around her hands. She testified that Henley then tried to remove her bra, but could not because of the duct tape around her hands. She testified that Henley cut the bra to remove it.

The victim testified that Henley proceeded to rape her both vaginally and anally. She testified that he also performed oral sex on her. She testified that these events took place on the bed and on the floor. The victim testified that Henley repeatedly threatened to kill her and that he repeatedly pressed the knife against her. She testified that while Henley was raping her, she accidentally urinated. The victim testified that Henley became angry and placed a pillow over her face with so much pressure that she could not breathe. The victim began to struggle with Henley and was able to free her hands. She tried to escape from the room, but Henley stopped her. The victim testified that she broke the bedroom window and was screaming for help, when Henley began to choke her. The victim indicated that she grabbed Henley in his genital area and he released her throat and began stabbing her. The victim testified that during the struggle she was able to grab the knife. The struggle was so violent that the closet doors were knocked down. At some point, Henley grabbed his clothes and fled.

According to the transcript, the victim then ran, nude, from her apartment. She was observed by a neighbor who was in the parking

-7-

lot preparing to leave for work. The neighbor, Curt Chancellor, testified that he saw the victim running out of the building without any clothes on and heard her screaming that she had been raped. Chancellor testified that he also observed a man who had run from the building before the victim. He testified that the man got into a light blue car and "shot out" of the parking lot. Chancellor was unable to get the license plate number, because the car left the area so quickly. Chancellor stated that the victim ran toward an RTA bus while continuing to scream that she had been raped and that the perpetrator had tried to kill her. He testified that the victim appeared to have stab wounds, and that she was crying.

The State also presented the testimony of Ron Chambers. Chambers is an RTA bus driver. During one of his bus runs, he was stopped near the victim's apartment complex. Chambers testified that he heard screams and then observed a woman running toward the bus. He testified that the woman was naked and bleeding. He further testified that he heard her yell that she had been raped and stabbed. Chambers also stated that he observed a light blue car speed out of the complex parking lot. Chambers testified that he called 911 and his supervisor.

Dayton Police Officer Rod Roberts testified that he was dispatched to the scene, where he found a female wearing only a jacket over her shoulders. He testified that she was covered with blood and that she was hysterical and crying. Another police officer, Ed Zawodniak, testified that when he arrived upon the scene he noted that the apartment showed signs of a violent struggle. He testified that he observed a broken window and a bra that had been cut. He also testified that he observed some torn, depicted her stab wounds. He testified that she also had some duct tape on the back of her neck, and signs on her neck that indicated that it had been duct taped.

The State also presented the testimony of the emergency room doctor who initially examined the victim. The doctor testified that the victim was sobbing, shaking and "extremely upset." The doctor testified that the victim stated that she had been raped and stabbed.

Finally, the State presented the testimony of Joy Negron, a Buffalo New York policewoman. Negron testified that she was aware that the City of Dayton was looking for Henley. She testified that while on routine patrol on May 28, 2004, she observed and arrested Henley.

Henley also testified at trial. He claimed that he and the victim had known each other and been in contact prior to the alleged rape. He

testified that on May 23, 2004, he had been at his girlfriend's apartment. He testified that he left to get something to eat, and that he went to Chicken Louie's restaurant where he encountered the victim. He testified that while there, he and the victim "made a few gestures to each other which indicated that [they] were going to contact each other and that he was going to pick her up after she got off work at 5:00 a.m."

Henley testified that at approximately 5:00 a.m. he was driving a dark gray vehicle when he picked up the victim. He testified that he drove her to her apartment and that they decided to engage in sex. He testified that they went to the upstairs bedroom of the victim's apartment where they proceeded to undress. According to Henley, he and the victim engaged in consensual oral, vaginal and anal sex.

At the conclusion of the sexual encounter, Henley began to get dressed. Henley testified that as he was getting dressed, a man came into the room with a knife and a ball cap. Henley testified that the man attempted to rob him, but that Henley began fighting. Henley testified that the victim helped the man during the altercation. Henley further testified that he was able to gain control of the knife at which point the man fled. Henley testified that the victim continued to attack him and that they fell into a window which broke. Henley testified that he and the victim then fell down and that he put his hands around her throat and demanded to know who had just attempted to rob him. Henley testified that he then left the apartment.

Henley also presented the testimony of his girlfriend, Barbara Pettiford. Henley arrived at Pettiford's residence after leaving the victim's apartment. Pettiford testified that Henley appeared nervous, scared and shaken. She testified that he made statements to her about being "jumped" and hit, and that he kept saying, "it was either me or them." Pettiford also testified that Henley "grabbed his bags and stuff and he said he had to get out of town because they might have followed him." Pettiford further stated that Henley told her to get her children and go stay with her mother, who resided in another town.

The record indicates that later that same evening, Henley traveled to Buffalo, New York. Following his arrest there, he was indicted and tried in Montgomery County.

The jury convicted Henley on all charges. Henley was sentenced to a prison term of twenty-two years. He was sentenced to the maximum term, ten years, for the Rape convictions. Additionally, some of the

> sentences were ordered to run consecutively. Henley was also
> designated a Sexual Predator.

*State v. Henley*, 2005 Ohio App. LEXIS 5531 at **2-9 (Ohio App. 2nd Dist. Nov. 18, 2005).

In the Statement of Facts portion of his Reply (Doc. No. 9 at 2-6), Petitioner recites his

version of the facts of the underlying events which resulted in his conviction. However, he does not

dispute that the applicable law, 28 U.S.C. §2254(e)(1), requires this Court to presume the

correctness of state court findings of fact unless a petitioner overcomes that presumption by clear

and convincing evidence. *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,*

161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual

findings made by state appellate courts on the basis of their review of trial court records. *Brumley*

*v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

While Petitioner carefully recites the evidence at trial which supports his position, including

giving trial transcript references, he makes no argument as to why the testimony given there is so

clearly and convincingly true that the implicit jury findings and explicit Court of Appeals' findings

to the contrary are not binding on this Court.

Instead, Petitioner asserts he is entitled to an evidentiary hearing "before the court can make

any credibility determinations on the facts alleged in this petition and supporting exhibits" and

"[a]ny controverted facts found by the state court while denying a request for an evidentiary hearing

necessarily result from an 'unreasonable determination' of the facts, and hence are not entitled to

any presumption of correctness." (Traverse, Doc. No. 9, at 8). Petitioner claims that the denial of

evidentiary hearing in the state courts took place at the stage of his Application for Reopening under

Ohio App. R. 26(B).

28 U.S.C. §2254(e)(2) as adopted by the Antiterrorism and Effective Death Penalty Act of

1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") provides:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that
>
> (A) the claim relies on
>
>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner's argument amounts to claiming that a federal habeas court is bound to conduct an evidentiary hearing on the underlying facts (essentially, to try those facts *de novo*) whenever a habeas petitioner has been denied an evidentiary hearing at some stage of the state court process. That simply is not the law.  As the United States Supreme Court has recently held:

> Prior to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, the decision to grant an evidentiary hearing was generally left to the sound discretion of district courts. Brown v. Allen, 344 U.S. 443, 463-464, 73 S. Ct. 397, 97 L. Ed. 469 (1953); see also Townsend v. Sain, 372 U.S. 293, 313, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963). That basic rule has not changed. See 28 U.S.C. § 2254, Rule 8(a) ("The judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted").

*Schriro v. Landrigan*, ___ U.S. ___, 127 S. Ct. 1933, 1939, 167 L. Ed. 2d 836 (2007).  Because of the deferential standard in §2254(d)(1) and other limitations on granting the writ in the AEDPA, "if

the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 1940. "If the district courts were required to allow federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings, district courts would be forced to reopen factual disputes that were conclusively resolved in the state courts." *Id.*

Ohio law does not provide for the taking of evidence on direct appeal or on an application to re-open a direct appeal. *State v. Hooks*, 92 Ohio St. 3d 83 (2001)**.** In this it is similar to the law in most States and in the federal system, where courts of appeal are generally limited to the record created in a trial court. If Petitioner's interpretation were adopted, virtually every federal habeas case would require a trial *de novo* of the underlying criminal case.

Petitioner here received the essential hearing on the evidence which is required by the Constitution in every criminal case: a trial by a jury which rendered verdicts on the counts of the indictment presented to them. The Court of Appeals' findings of fact, set forth above, are based on those verdicts and a review of the transcribed evidence from the trial. Hence those findings are entitled to the presumption of correctness provided by 28 U.S.C. §2254(e)(1) and Petitioner has not overcome that presumption.

## Ground One: Ineffective Assistance of Trial Counsel

In his first Ground for Relief, Henley asserts his trial attorney provided ineffective assistance of counsel in thirteen separate ways. In his Traverse he correctly cites the governing standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and then

argues the merits of this claim for almost thirty pages (Traverse, Doc. No. 9, at 11-39).

Respondent asserts that Henley has waived federal review of this claim on the merits by failing to present the claim on direct appeal either to the Ohio Court of Appeals or to the Ohio Supreme Court.[2]  Petitioner concedes that he did not present this claim to either of those courts (Traverse, Doc. No. 9, at 56).  However, he asserts

> Mr. Henley did in indeed preserve the issue by raising it in an Appellate Rule 26 (B) application to reopen his direct appeal and following the denial of this application he further appealed that decision to the Ohio Supreme Court.

*Id*.

Ineffective assistance of appellate counsel can be excusing cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).  However, before a habeas petitioner can rely on ineffective assistance of appellate counsel for that purpose, he or she must first present the ineffective assistance claim to the state courts in the manner required by state law.  *Edwards v. Carpenter,* 529 U.S. 446, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). If the state court denies that claim on the merits, the federal court reviews that denial under the deferential standard of 28 U.S.C. §2254(d)(1), to wit, the state court conclusion must be accepted unless it is contrary to or an unreasonable application of law clearly established by the United States Supreme Court.  *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Bell v. Cone*, 535 U.S. 685, 693-94, 122 S. Ct. 1843, 1849-50, 152 L. Ed. 2d 914 (2002); *Brown v. Payton,* 544 U.S. 133, 134 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005).

---

[2]To the extent that any ineffective assistance of trial counsel claim depended on facts outside the record, it could have been raised in Petitioner's petition for post-conviction relief under Ohio Revised Code § 2953.21.  If there were such claims in this case raised in that manner, Petitioner procedurally defaulted on them by not appealing from denial of the post-conviction petition.

The Court of Appeals thoroughly considered each of Petitioner's assertions that failure to raise a particular claim of ineffective assistance of trial counsel on direct appeal was an instance of ineffective assistance of appellate counsel (Decision and Entry, Ex. 27 to Return of Writ, Doc. No. 6).  They applied the proper federal legal standard as set forth in *Strickland, supra.*  In each instance they concluded that the complained-of act or omission by trial counsel did not constitute deficient performance, either because it did not happen as Petitioner claimed or there was a plainly good reason from trial counsel's perspective why an act was done or omitted.  They further relied on the proposition that good appellate counsel do not raise every possible assignment of error, but concentrate on the ones most likely to prevail.  Applying those standards, they concluded there was no ineffective assistance of appellate counsel.

In his Traverse, Petitioner makes no argument to the contrary.  He asserts instead that he preserved all these claims on the merits simply by making them in the 26(B) Application.  However, merely making claims of ineffective assistance of appellate counsel does not preserve the underlying claims for merit review in federal court.  *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001).  Instead, when the appellate court resolves the ineffective assistance of appellate counsel claim on the merits, a habeas petitioner must first persuade the federal court that that disposition is an unreasonable application of federal law.  This Court accordingly examines the omitted assignments of error in light of their disposition by the Court of Appeals and relevant United States Supreme Court law.

### Ground 1(1): The *Blakely* Claim

Henley first asserts appellate counsel was ineffective for failing to challenge the constitutionality of his sentence under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004).  The appellate court determined that appellate counsel was not ineffective for failing to make a *Blakely* claim (or for not asserting that trial counsel was ineffective for failure to make a *Blakely* claim) because there was no prejudice: even if the claim had been successful on the merits, Petitioner would have been remanded for resentencing and

> The holding in *Foster* [*State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006).] gives the trial court greater discretion in sentencing than it had under R.C. 2929.14(E)(4) and R.C. 2929.14(B).  In our view it is unrealistic to think that the trial court, now possessing greater discretion, would impose a lesser sentence on remand.  After all, it decided to impose consecutive sentences on Henley in the first instance, when it was required to make specific findings to justify doing so. There seems no reason to believe that the trial court would impose a lesser sentence now that the requirements for imposing the greater sentence have been made less onerous.  Consequently, we are unpersuaded that reopening Henley's appeal, reversing the sentence, and remanding for resentencing would result in any benefit to him, and we thus find no ineffective assistance of appellate counsel.

(Decision and Entry, at 3-4.)

Petitioner argues this claim in his Traverse as if he had a straight *Blakely* claim before this Court, but he does not.  What he has instead, as Respondent points out in his Surreply (Doc. No. 12) is a claim that his trial counsel was ineffective for failure to make a *Blakely* claim (Ground for Relief 1(a)) and his appellate counsel was ineffective for failing to accuse his trial counsel of ineffectiveness for failure to make a *Blakely* claim (Ground Three).  The Court of Appeals found there was no ineffective assistance of appellate counsel because there was no prejudice from failure to raise the *Blakely* assignment of error.  This Court must decide whether that was contrary to or an unreasonable application of clearly established federal law.

-15-

An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *See Smith v. Murray*, 477 U.S. 527, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674(6th Cir. 2000), citing *Strickland* and *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Counsels' failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented. *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

Henley was sentenced on October 29, 2004, shortly after *Blakely* was decided on June 26, 2004. *Foster* was not decided until February 27, 2006, long after the decision here on direct appeal. Prior to *Foster* and prior to Henley's sentencing, the Second District Court of Appeals had held that *Blakely* did not apply to Ohio's sentencing scheme under S.B. 2. See *State v. Sour*, 2004 Ohio App.

LEXIS 3689 (Ohio App. 2nd Dist. July 30, 2004).  In the period between *Sour* and *Foster* – i.e., the time when Henley's appeal was taken, argued, and decided – it would have been a vain act to raise a *Blakely* claim.  It cannot have been ineffective assistance of appellate counsel to fail to raise a claim which would have been rejected; it was therefore not deficient performance to fail to plead that issue on appeal.

The Court of Appeals, of course, did not decide this sub-claim on the deficient performance prong of Strickland, but went directly to the prejudice prong and concluded there was no prejudice because of the likelihood the trial judge would re-sentence after *Foster* to the same sentence he had found appropriate before *Foster.*

Petitioner does not respond directly to this argument.  Instead, he asserts that the trial judge would not have been permitted to sentence him to the same sentence because this amounts to a retroactive application of what he calls the "*Foster* opinion remedy," to wit, the declaration by the Ohio Supreme Court that the portions of S.B. 2 deemed unconstitutional can be severed from the balance of the statute. Henley never made this argument in the 26(B) Application.  Essentially he is  arguing that, if his appellate counsel had made a *Blakely* claim, the Court of Appeals would have overruled *Sour* and remanded with instructions to impose minimum concurrent sentences.  Even though we now know from *Foster* that *Sour* was wrong, no Ohio court or federal court sitting in Ohio has adopted Petitioner's theory about retroactive application of *Foster*.  To put it another way, even if the *Blakely* claim was a possible winner (despite Sour), Petitioner would have had to win again at the trial court level with his retroactivity argument.  It simply cannot have been ineffective assistance of appellate counsel to have failed to speculate that such an argument would be successful when it has never yet been successful in Ohio courts applying *Foster.*

-17-

**Ground 1(2): Failure to Object to Judicial Bias and Abuse of Discretion**

In Ground for Relief 1(2), Petitioner asserts his trial counsel was ineffective for failing to object to judicial bias and abuse of discretion in classifying him as a sexual predator and imposing consecutive sentences based on uncharged conduct.  This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record. Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

**Ground 1(3): Failure to Object to Separate Sentences for Allied Offenses of Similar Import**

In Ground for Relief 1(3), Petitioner asserts his trial counsel was ineffective for failing to object to his being sentenced separately for allied offenses of similar import.  This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.  Morever, as the Court of Appeals explained in its Decision denying the 26(B) Application, the objection would not have been well taken under Ohio law if it had been made, either at trial or on direct appeal.

**Ground 1(4): Failure to Argue Mitigation at Sentencing**

In Ground for Relief 1(4), Petitioner asserts his trial counsel was ineffective for failing to

argue mitigating facts at sentencing, presumably referring to the allegedly mitigating facts raised with this claim on the 26(B) Application.  This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.  Morever, as the Court of Appeals explained in its Decision denying the 26(B) Application, the asserted mitigating facts were either known to the trial judge (lack of prior felony record from the presentence investigation report) or not true as Petitioner represents them (alleged steady work).

### Ground 1(5): Failure to Correct Reliance on Misdemeanor Conviction

In Ground for Relief 1(5), Petitioner asserts his trial counsel was ineffective for failing to correct the trial judge's reliance on a misdemeanor conviction in imposing sentence.   This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.  Morever, as the Court of Appeals explained in its Decision denying the 26(B) Application, the presentence report (which is a report by the probation department, an arm of the court, and not by the police) reflected the conviction and Petitioner did not dispute that the conviction occurred.  Instead, Petitioner argues that the only way a prior conviction may be proved in Ohio is by following Ohio Revised Code § 2945.75(B).  That statute by its own terms applies only to proof of a prior conviction for purposes of raising the degree of the offense in suit.

**Ground 1(6): Failure to Correct Reliance on Misdemeanor Probation Violation**

In Ground for Relief 1(6), Petitioner asserts his trial counsel was ineffective for failing to correct the trial judge's reliance on a misdemeanor probation violation in imposing sentence. This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record. Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

The Court of Appeals found that the record did not support Petitioner's claim that this actually happened. Petitioner cites this Court to transcript p. 890 where the trial judge says that Petitioner "did not respond favorably to the probation he received in that improper handling [of firearms in a motor vehicle] offense." Henley responded that he had been let off six months early because of responding favorably.

The trial judge's comment is ambiguous. "Did not respond favorably" could be read as reflecting failure to successfully complete probation or it could be read as saying that, in light of the extremely serious charges then before the court, it was clear that probation in the earlier case had not worked. This Court is bound to accept the Court of Appeals' reading of the comment.

In any event, it is extremely unlikely that trial counsel's making an additional record on this point would have made any difference. In the very next paragraph, the trial judge notes that Henley is completely without remorse, "even more extreme, he's lying, lying, lying, lying under oath, lying in court." Henley responded, "So you say," but that is also the clear implication of the jury verdict. The notion that a correction of the misdemeanor record would have influence the outcome is extremely unlikely.

-20-

**Ground 1(7): Failure to Object to Sexual Predator Classification**

In Ground for Relief 1(7), Petitioner asserts his trial counsel was ineffective for failing to object to elevation of his classification from the presumptive sexual offender to sexual predator.  The Court of Appeals found there was no ineffective assistance of appellate counsel for failure to raise this point because the classification question had been raised on direct appeal and decided adversely to Henley.  In his Traverse, Henley does not dispute this point.

**Ground 1(8): Failure to Object to Prejudicial Evidence**

In Ground for Relief 1(8), Petitioner asserts his trial counsel was ineffective for failing to object to the introduction of various photographs of the victim, a videotape of the victim standing nude and bloody on an RTA bus immediately after the crime, and the victim's display of her scars to the jury.   This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

Moreover, the claim is completely without merit.  Petitioner argues in his Traverse that all of this graphic evidence was prejudicial because there were no corroborating medical reports or witness statements.  He continues to regard the victim's testimony as irrelevant.

**Ground 1(9): Failure to Object to Prosecutorial Misconduct**

In Ground for Relief 1(9), Petitioner asserts his trial counsel was ineffective for failing to object to what he calls "textbook" examples of prosecutorial misconduct.  This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it. Moreover, the Court of Appeals concluded in its Decision and Entry denying the 26(B) Application that none of these incidents actually constituted prosecutorial misconduct.

### Ground 1(10): Failure to Impeach Victim's Credibility

In Ground for Relief 1(10), Petitioner asserts his trial counsel was ineffective for failing to impeach the victim's credibility with a prior allegedly inconsistent statement, "a co-worker raped me."  This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record.  Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

Moreover, the claim is without merit.  As the Court of Appeals noted, defense counsel had a difficult job since Henley admitted having sex with the victim and the jury had seen a videotape of her bleeding, nude (except for a jacket) and hysterical.  Under those circumstances, vigorous cross-examination about what was apparently a misspoken word would likely have done more harm than good.

### Ground 1(11): Failure to Request an Instruction on Aggravated Assault

In Ground for Relief 1(11), Petitioner asserts his trial counsel was ineffective for failing to request a lesser included offense instruction for aggravated assault. This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record. Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

As the Court of Appeals noted in denying the 26(B) Application, Henley requested and received an instruction on self-defense. While that defense is not legally inconsistent with the provocation element required to reduce felonious assault to aggravated assault, it is difficult to see how they could be effectively argued together. ("I was defending myself, but, if you don't believe that, believe that I was seriously provoked into assaulting someone.") In addition, as the Court of Appeals noted in its initial Opinion, the residue of duct tape on the victim's face and neck "could not be easily reconciled" with Henley's testimony.

## Ground 1(12): Failure to Object to Witness Statement

In Ground for Relief 1(12), Petitioner asserts his trial counsel was ineffective for failing to impeach the victim's credibility with a prior allegedly inconsistent statement, "a co-worker raped me." This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record. Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

In arguing this claim in the Traverse, Henley does not bother to explain why the witness statements were improper; he merely recites a string of transcript citations. He has thus failed to

show how failure to object to these comments was sufficiently ineffective assistance of trial counsel that, had this argument been made on appeal, the likely result of the appeal would have been different.

### Ground 1(13): Defense Counsel's Characterization of Henley as a "Womanizer"

In Ground for Relief 1(13), Petitioner asserts his trial counsel was ineffective for characterizing him as a "womanizer." This claim is procedurally defaulted because it was not raised on direct appeal and could have been demonstrated from the face of the record. Pleading it as a claim underlying the claims of ineffective assistance of appellate counsel did not "resurrect" it.

The Court of Appeals noted that the word was used once and the difficult circumstances under which counsel was operating. According to Henley's account, he engaged in extensive consensual activity with Ms. Williams (anal intercourse only abandoned when it was "hurting her too much") and then, after he was attacked, drove to his girlfriend's home and told her what happened. A reasonable defense attorney might reasonably expect that at least some jurors would have moral qualms about this admitted course of conduct. From his argument in the Traverse Petitioner must believe "womanizer" is a harsher word than "cheater," which would be the ordinary language characterization of a man who had sex with a casual acquaintance while in a relationship with a "girlfriend." But defense counsel might reasonably have believed that "womanizer" was the gentler way to characterize Henley and also have believed that some explanation of his admitted sexual behavior was necessary to "humanize" him for the jury.

In sum, all of Petitioner's sub-claims of ineffective assistance of trial counsel are

procedurally defaulted because not raised on direct appeal and, in any event, without merit. The first Ground for Relief should be dismissed with prejudice.

## Ground Two: Trial Court Error

In his second Ground for Relief, Petitioner asserts the trial court committed eight separate errors which he claims merit habeas corpus relief. Those sub-claims are considered separately below.

## Ground 2(a): Exclusion of Part of the Testimony of Barbara Pettiford

After his sexual encounter with the victim and his alleged encounter with another male in the victim's apartment, Henley went to the apartment of his girlfriend, Barbara Pettiford. What he then said to Pettiford at her apartment was admitted in evidence, when elicited from Pettiford at trial, under the excited utterance exception to the hearsay rule. Henley and Pettiford then drive to the Dayton Mall where Henley made additional statements about what happened; these were excluded by the trial court as no longer meeting the excited utterance exception.

Henley preserved this claim for federal review by raising it as his First Assignment of Error on direct appeal.[3] The Ohio Court of Appeals did not decide the constitutional claim, leaving it for

---

[3]The First Assignment of Error also relied on a claim that it was an abuse of discretion under Ohio evidence law to exclude the second portion of Pettiford's testimony. That portion of the claim is not cognizable in federal habeas corpus because it does not arise under the United States Constitution. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), *Barclay v. Florida,* 463 U.S. 939,

-25-

this Court to consider *de novo*.

A fair opportunity to present a defense in a criminal case is of course a constitutional right. *Baze v. Parker,* 371 F.3d 310 (6th Cir. 2004), *citing Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Presenting relevant evidence is integral to that right. *Taylor v. Illinois*, 484 U.S. 400, 409-09 (1988). Few rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).  However, a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Id.*  The right to present relevant evidence is not unlimited, but subject to reasonable restrictions. *United States v. Scheffer*, 523 U.S. 303, 308 (1998), and may bow to accommodate other legitimate interests in the criminal trial process. *Rock v. Arkansas*, 483 U.S. 44, 55 (1987).

The hearsay rule is a long-standing rule of evidence both at English common law and in the United States.  There is no doubt that the evidence Henley attempted to present through Pettiford was hearsay: an out-of-court statement that Henley made to Pettiford, offered to prove the truth of the content of the statement, to wit, that Henley was himself the victim of attempted robbery by the victim's male accomplice.  See Ohio R. Evid. 801.  Petitioner presents no law establishing a constitutionally-mandated hearsay exception for criminal defendants.  In fact, hearsay restrictions are often more rigidly enforced in criminal cases to protect defendants.  See, e.g, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).  One purpose of the hearsay rule is to subject

---

103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

hearsay declarants to cross-examination.  Therefore, exclusion of hearsay which constitutes justificatory narrative spoken by a criminal defendant is particularly well suited to make trial results reliable, since a defendant cannot be compelled to take the stand and be cross-examined himself on any explanation he may have given to a third party.  There was no violation of Petitioner's constitutional right to present a defense in the trial court's exclusion of part of the hearsay offered through Pettiford.  Ground for Relief 2 (a) is without merit.

### Ground 2(b): Trial Judge Bias and Abuse of Discretion in Sentencing

In part, Petitioner claims in Ground 2(b) that the trial judge was biased against him as evidenced by his characterization of Henley as a serial rapist based on uncharged conduct.  His Traverse makes it clear that Petitioner regards this as a constitutional claim, asserting that having a biased judge is a structural error requiring reversal.  (Traverse, Doc. No. 9, at 29, 43.)  However, this portion of the claim is procedurally defaulted because it was never presented to the Ohio courts.

In part, Petitioner claims in Ground 2(b) that the trial judge abused his discretion in imposing consecutive sentences for the rapes.  As noted by Respondent, claims of abuse of discretion in sentencing are not federal constitutional claims and are therefore not cognizable in habeas corpus. *Sneed v. Donahue,* 993 F.2d 1239 (6th Cir. 1993).  In addition, the trial judge indicated he would have imposed consecutive sentences even without considering the uncharged rapes (Ex. 45 to Return of Writ; Transcript at 892, 894.)

Ground for Relief 2(b) is therefore without merit.

**Ground for Relief 2(c): Abuse of Discretion by Imposing Mandatory Sentence**

In Ground for Relief 2(c), Henley contends the trial judge abused his discretion by imposing what he characterized as a mandatory ten year sentence for rape. This claim is procedurally defaulted because it was never presented to the state courts on direct appeal. Morever, it fails to state a claim cognizable in federal habeas corpus for the same reasons as Ground for Relief 2(b). It should be dismissed with prejudice.

**Ground for Relief 2(d): Allied Offenses and Double Jeopardy Violations**

In Ground for Relief 2(d), Henley contends the trial court committed error in sentencing him separately for "crimes that constitute allied offenses in violation of double jeopardy prohibitions."

This claim is procedurally defaulted because it was not raised on direct appeal in the Ohio courts. Instead, Henley argued on appeal that imposition of separate sentences was prohibited under Ohio Revised Code § 2941.25 because they were allied offenses of similar import. (See Appellant's Brief, Ex. 11 to Return of Writ, 20-24.) Even in his Traverse, Henley argues this Ground for Relief as an "allied offenses of similar import" claim, rather than a Double Jeopardy claim.

Because violations of Ohio Revised Code § 2941.25 are not cognizable in federal habeas corpus, Ground for Relief 2(d) should be dismissed with prejudice.

**Ground for Relief 2(e): Failure Adequately to Prove Petitioner is a "Sexual Predator"**

-28-

In Ground for Relief 2(e), Petitioner asserts that the state court found him to be a sexual predator within the meaning of that term in Ohio law without having clear and convincing evidence to support that finding. As Respondent notes, claims of improper classification under Ohio's sexual offender statute are not cognizable in federal habeas corpus. *Leslie v. Randle*, 296 F.3d 518 (6th Cir. 2002). Therefore Ground for Relief 2(e) should be dismissed.

## Ground for Relief 2(f): Cruel and Unusual Punishment

In Ground for Relief 2(f), Henley asserts that the sentence imposed on him constitutes cruel and unusual punishment. Petitioner failed to raise this claim on direct review and it is therefore procedurally defaulted since, as decided above, he has not shown ineffective assistance of appellate counsel to excuse that default.

Even if the claim were not defaulted, it would be without merit. The Eighth Amendment does not require a strict proportionality between the crime and sentence. Rather, it only prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)(plurality opinion). A sentence within the statutory maximum generally does not constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F. 3d 298 (6th Cir. 2000);*United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995). The sentence imposed on Henley is both within the statutory maxima provided by Ohio law and not grossly disproportionate to the seriousness of the offenses of which he was convicted. Ground for Relief 2(f) should be dismissed with prejudice.

## Ground 2(g): Denial of Cross-Examination

In Ground for Relief 2(g), Petitioner claims the trial judge improperly limited his counsel's cross-examination of a Buffalo, New York, detective.  As Respondent notes, Henley failed to raise this claim on direct appeal and has therefore procedurally defaulted in its presentation.  When Petitioner did eventually raise this claim (as a claim underlying his ineffective assistance of appellate counsel claim), he failed to argue it as a matter of federal constitutional law.

In the alternative, this Ground for Relief is without merit.  The trial transcript reveals that the State produced testimony from Buffalo Detective Negron about her arrest of the Petitioner on a warrant from Ohio. Defendant's counsel claimed this opened the door to introduction of a written police report including self-serving exculpatory statements Petitioner made later to other Buffalo detectives, identified at Transcript p. 500 as Defendant's Exhibit I.  As shown by the colloquy among the court and counsel which follows, the trial judge was not able to resolve the question on the spot and took a recess to do so.  After the lunch recess, Officer Negron continued on direct to relate that Mr. Henley had told her he was set up in what happened in Dayton.  *Id.* at 507, 510.[4]  It does not appear that defense counsel was permitted to introduce the longer statement Henley gave to other detectives.

Without doubt, Mr. Henley's statements embodied in the report of other detectives was hearsay – an out of court statement offered to prove the content, to wit, that Henley was set up.  Defense counsel offered the other statements under the business records exception to the hearsay

---

[4]It appears this reference to Henley's statement that he was set up is what the Court of Appeals is referring to when its cites p. 510 of the transcript in its Decision and Entry denying the Rule 26(B) Application.  See p. 9 thereof.

rule.  (Trial Transcript at 498.)  Introduction of those statements was not in any way necessary to
"complete" Detective Negron's report of what Henley said since they were not statements made to
her.  Nor can they be said to rebut what Officer Negron said. Nor did the examination of Detective
Negron "open the door" to offering these statements; as the two cases cited by Henley make clear,
that principle only permits a very narrow exception to the hearsay rule.  Even if the trial judge were
mistaken as a matter of Ohio hearsay law, this Court cannot correct such a ruling in a habeas corpus
case.

Finally, of course, this claim has no merit under the Confrontation Clause, the only arguably
relevant constitutional provision, because defense counsel was permitted to cross-examine Detective
Negron thoroughly about her own testimony.

Ground for Relief 2(g) is without merit and should be dismissed with prejudice.

### Ground for Relief 2(h): Eliciting of Prejudicial Testimony

In Ground for Relief 2(h), Petitioner asserts that the trial judge erred in allowing the
prosecutor to elicit the statement from the victim that she would not want to date the Defendant
because she thought he was gay or bisexual.  The objected-to testimony happened in this way:
Defendant's counsel had cross-examined the victim at length attempting to establish that the sexual
activity between her and Henley was consensual.  On re-direct, the prosecutor asked whether the
victim, who had seen the Defendant before at Sinclair College and at Chicken Louie's, ever wanted
to date him.  When she answered "no," the prosecutor asked "why" and she answered "He seemed
to be like he's gay or bisexual or something.  It wasn't nothing that I would be interested in."  (Trial

Transcript at 333.) Thus the testimony was not elicited on direct, but on re-direct after the defense had cross-examined on the theory that the sex was consensual. Nothing in the prosecutor's question suggested the answer. Finally, the objection made by the defense was to any introduction of past sexual activities of the Defendant and the trial court pointed out that that was not the testimony which had been given. *Id*. at 334.

Thus, the ruling of the trial judge was correct as a matter of Ohio evidence law. Even if it had not been, the Petitioner procedurally defaulted when he did not present this claim on direct appeal. Even if he had presented it on direct appeal, it would have been unpersuasive because, as the Court of Appeals pointed out in denying the 26(B) Application, it was one isolated volunteered reference in a long transcript. Petitioner has presented no federal constitutional law suggesting that a rape victim's one-time volunteered statement that she thought the perpetrator was gay or bisexual, offered to rebut the defense that the sexual conduct was voluntary, creates an unfair trial.

Ground for Relief 2(h) is without merit and should be dismissed with prejudice.

## Ground Three: Ineffective Assistance of Appellate Counsel

In his third Ground for Relief, Petitioner asserts he received ineffective assistance of appellate counsel because his appellate counsel failed to present the claims he now makes in Grounds for Relief One and Two and deficiently presented those assignments of error he did make.

For the reasons set forth above in the discussion of Ground One for Relief, the Court of Appeals' Decision denying the 26(B) Application was neither contrary to nor an unreasonable application of the governing federal law as determined by the United States Supreme Court.

Ground Three for Relief should therefore be dismissed with prejudice.

### Ground Four: Insufficient Evidence of Attempted Felonious Assault

In his fourth Ground for Relief, Petitioner asserts that the evidence presented at trial was insufficient to support his conviction for attempted felonious assault.

Respondent first asserts that this Ground for Relief is procedurally defaulted because it was not presented to the Ohio courts. Instead, Petitioner argued on direct appeal that his conviction was against the manifest weight of the evidence.

In *State v. Thompkins,* 78 Ohio St. 3d 380, 678 N.E. 2d 541 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review for manifest weight. It held:

> In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of

mathematics, but depends on its effect in inducing belief." (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387. In *State v. Martin*, 20 Ohio App. 3d 172, 485 N.E. 2d 717 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

485 N.E. 2d at 718, ¶3 of the syllabus. The consequences of the distinction are important for a criminal defendant. The State may retry a case reversed on the manifest weight of the evidence; retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982). Mr. Henley does not deal with this argument at all in his Traverse, but merely argues insufficiency of evidence as if it were the same as manifest weight.

-34-

Mr. Henley argues he could not be found guilty of both felonious assault and attempted felonious assault because the latter is a lesser included offense of the former. However ignores that the felonious assault conviction was for the stab wounds inflicted on the victim and the attempted felonious assault was for the attempt to smother her with a pillow.

Even if this claim had been presented to the state courts as a federal constitutional claim, it is without merit. The victim plainly testified that Henley attempted to smother he with a pillow. Mr. Henley seems to believe that there must be some corroborating evidence, for he notes that there was no expert testimony that indicated suffocation. No such testimony is needed; the victim's eyewitness testimony that he attempted to smother her is sufficient, given that the Court of Appeals noted that suffocation can cause death or brain or other internal organ damages because of cutting off oxygen.(See Decision and Entry Denying 26(B) Application at 11-13.)

An allegation that verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319.  This rule was adopted as a matter of Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).  Of course, it is state law which determines the elements of offenses;  but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*  This is precisely the same standard the Ohio Court of Appeals applied in deciding, in the context of denying the 26(B) Application, that Petitioner did not receive ineffective assistance of appellate counsel when this claim was not presented on direct appeal.  Even if it had been, it would not have been persuasive.

Petitioner's fourth Ground for Relief should be dismissed with prejudice.

### Conclusion

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice in its entirety.  Because of the fluidity of the law in applying *Blakely*, supra, in Ohio, the Magistrate Judge believes any recommendation regarding a certificate of appealability would be premature at this time.

June 27, 2007.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with

-36-

this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

H:\DOCS\Henley v. Moore R&R.wpd